Theodore W. WILLMORE, Sr.

v.

AMERICAN ATELIER, INC.

No. Civ.A. 98–6623.

United States District Court,
E.D. Pennsylvania.

Nov. 24, 1999.

Richard L. Orloski, Allentown, PA, for plaintiff.

John K. Baker, Tallman, Hudders & Sorrentino, Allentown, PA, for defendant.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

Plaintiff, Theodore Willmore, instituted this suit under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA") seeking both monetary damages and reinstatement to his former position with American Atelier, Inc. as a furniture scruffer. Defendant has now filed a motion for summary judgment on the grounds that, (1) plaintiff is not a disabled person within the meaning of the ADA and, (2) its decision to terminate his employment was due solely to his insubordinate and belligerent behavior on the day of his termination. For the reasons which follow, the motion for summary judgment shall be granted.

### *Factual Background*

According to the averments in his complaint, Theodore Willmore, Sr. was hired by American Atelier, Inc. on May 4, 1998. A short time later, on June 3, 1998, Mr. Willmore contends that he seriously injured his back when he fell while working but he apparently nevertheless continued to work. On June 22, 1998, the plaintiff

somehow injured his hands while working, and was terminated later that same day. By this lawsuit, Plaintiff contends that Defendant terminated his employment because of his hand and back injuries and that since these injuries effectively disabled him, his termination was therefore in violation of the ADA.

### Standards for Summary Judgment Motions

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed. R.Civ.P. 56. Under subsection (c) of that rule,

.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir. 1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates*, 751 F.Supp. 444 (S.D.N.Y.1990).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital*, 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169 (E.D.Pa.1990).

Where, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against [it]." Fed.R.Civ.P. 56(e). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and it cannot rely on unsupported assertions, conclusory allegations, or mere suspicions or beliefs in attempting to survive such a motion. *Tziatzios v. U.S.*, 164 F.R.D. 410, 411, 412 (E.D.Pa.1996) citing *Celotex v. Catrett, supra*, 477 U.S. at 325, 106 S.Ct. at 2553–54, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3rd Cir.1989).

### Discussion

The Americans with Disabilities Act prohibits certain employers from discriminating against individuals on the basis of their disabilities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2143 (1999). The core anti-discrimination section of the ADA provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*Deane v. Pocono Medical Center,* 142 F.3d 138, 142 (3rd Cir.1998); 42 U.S.C. § 12112(a). Under the Definitions section of the Act, a "covered entity means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). A "qualified person with a disability," in turn, is defined as "... an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires ..." 42 U.S.C. § 12111(8).

█ In light of the preceding definitions, the Courts have held that disability discrimination cases, like other types of employment discrimination, are to be analyzed under the burden shifting framework first articulated in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To establish a *prima facie* case of discrimination under the ADA, the plaintiff must therefore show three elements: (1) that he is a disabled person within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he has suffered an otherwise adverse employment decision as a result of discrimination. *Taylor v. Phoenixville School District,* 184 F.3d 296, 306 (3rd Cir.1999); *Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 (3rd Cir.1998).

Turning to the first prong of the *prima facie* case, we must initially determine whether or not Mr. Willmore is a disabled person within the meaning of the ADA. Under 42 U.S.C. § 12102(2), "a disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

The EEOC's regulations define "substantially limits" as "(I) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *Taylor v. Phoenixville,* 184 F.3d at 307, citing 29 C.F.R. § 1630.2(j)(1). The regulations also include the following factors for evaluating when someone is substantially limited in a major life activity: "(I) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.,* citing 29 C.F.R. § 1630.2(j)(2). Thus the determination whether a person has a disability under the ADA is clearly an individualized inquiry. *See: Sutton,* 527 U.S. at ——, 119 S.Ct. at 2147.

█ It appears from the Plaintiff's Affidavit in Opposition to the defendant's Motion for Summary Judgment that the "disabilities" upon which this lawsuit is based arose when he first injured his back when he tripped over a cart on June 9, 1998 and on June 22, 1998 when he hit the outside of his left hand on a piece of furniture and it began to swell up. Mr. Willmore received medical care for both of these injuries, but as plaintiff's deposition reveals, his physician directed only that he should not lift heavy objects and should not "overdo it" with regard to walking as a result of the back injury. Plaintiff further testified that he was told by the defendant's company doctor that he should refrain from working until his hand was further examined. There is no evidence that either injury was expected to result in a long period of disability or that Plaintiff lost any time from work as a result of his injuries. While the

plaintiff claims that he had a little bit of difficulty in sleeping, standing and "moving with the flow" at work from the back injury and that his ability to grip items with his left hand is impaired, in evaluating the nature and severity of these problems, we cannot find that they rise to the level of a "substantial limitation" within the meaning of the ADA nor is there any evidence that Mr. Willmore was unable to perform any major life activities as a consequence of the condition of either his hand or his back.

Similarly, there is no evidence that Mr. Willmore had a record of such an impairment nor is there any evidence that he was regarded as disabled by his former employer. Indeed, while American Atelier may have had notice that Mr. Willmore had suffered a back injury some three weeks before his termination, his hand injury was allegedly suffered on the same day that he was terminated and shortly after the plaintiff had confrontations with both a co-worker and the company controller. Given that there is no evidence that the plaintiff either missed any work as a result of his back injury, that he either required or requested any special accommodations as a result of either of his injuries, or that American Atelier "mistakenly believed" that plaintiff's "actual, non-limiting impairment substantially limited one or more of his major life activities," we cannot find either a record of his having such an impairment or that he was regarded as having one. *See Also: Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 119 S.Ct. 2133, 2137, 144 L.Ed.2d 484 (1999). Accordingly, we cannot find that the plaintiff was "disabled" within the meaning of the ADA.

 Turning next to the second and third prongs of the *prima facie* test, while we would find that Mr. Willmore was clearly qualified to perform the essential functions of his job (given that he continued to perform it despite his alleged injury), we find no evidence that the basis for the plaintiff's termination was anything other than insubordination and threatening behavior to both a co-worker and a superior. Indeed, Mr. Willmore's threatening and belligerent behavior was attested to at the depositions of James Balko and James Phillips and was further corroborated by the numerous written employee warning notices which plaintiff received over the brief course of his employment with the defendant company. Plaintiff himself admitted in his deposition that he had a verbal confrontation with Mr. Phillips and that when he was called in to explain what had happened with Mr. Phillips to Mr. Balko, the company controller and head of personnel matters, Mr. Balko "wasn't too pleased," his attitude "was not good." Although in an affidavit, the plaintiff asserts that he "was fired from American Atelier due to my disabilities, i.e. injuries to my back and hand, and John Hoffmeister and James Banko's perception of my disabilities, causing them to think that my disabilities rendered me a liability to the company," plaintiff has simply adduced no evidence to support his allegations or to refute the defendant's evidence, despite having had ample opportunity to do so through the discovery process. The plaintiff having failed to demonstrate two of the three prongs necessary to establish a *prima facie* case, we conclude that summary judgment is now appropriately entered in favor of the defendant and against the plaintiff.

An appropriate order follows.

### *ORDER*

AND NOW, this 24th day of November, 1999, upon consideration of the Defendant's Motion for Summary Judgment and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and judgment as a matter of law is hereby entered in favor of the Defendant and against the Plaintiff pursuant to Fed. R.Civ.P. 56.