**Eli JOSEPH, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., Defendant.**

**No. CIV.A. 99–CV–5782.**

United States District Court, E.D. Pennsylvania.

Dec. 19, 2000.

Pomerantz & Scheffer, Philadelphia, PA, for Mark S. Scheffer.

Klett Rooney Lieber & Schorling, Philadelphia, PA, for Jessamyne M. Simon, Michael E. Dash, Jr.

## MEMORANDUM

JOYNER, District Judge.

This is an employment discrimination case brought by Plaintiff Eli Joseph ("Plaintiff") against Defendant Continental Airlines, Inc. ("Continental"). In his Complaint, Plaintiff alleges that Continental unlawfully discriminated against him because of his race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9–1101 ("PFPO"). Presently before the Court is Continental's Motion for Summary Judgment. For the reasons that follow, we will grant Continental's Motion in its entirety.[1]

## BACKGROUND

Taken in the light most favorable to Plaintiff, the relevant facts are as follows. In September 1992, Plaintiff began working as a Ground Service Equipment ("GSE") mechanic for Continental in Newark, New Jersey. After several years in Newark, Plaintiff was transferred to Detroit, Michigan, and then to Philadelphia, Pennsylvania in December 1995. Once in Philadelphia, Plaintiff was placed in charge of organizing the airport's GSE shop, a position that entailed responsibilities beyond mechanical work, such as purchasing parts, dealing with third-party vendors, and managing a budget. Plaintiff's supervisor during this period was Ernie Taylor ("Taylor"), General Manager of the Philadelphia Airport.

In September 1997, Taylor was approached on separate occasions by two different third-party vendors who alleged that Plaintiff had solicited kickbacks from them during negotiations for business with Continental. First, Stephen Bulboff ("Bulboff") informed Taylor that Plaintiff had asked him for a $3,000 payment for the $30,000 worth of work that Plaintiff had approved for Bulboff. Several weeks later, Greg Pattani ("Pattani") told Taylor that Plaintiff had solicited payment from him as a condition of Plaintiff's continued approval of work for Pattani. In addition, Pattani claimed that Plaintiff sold him several surplus air bottles for $500, money

---

1. This Court has jurisdiction over Plaintiff's Title VII and § 1981 claims pursuant to 28 U.S.C. § 1331. We have jurisdiction over Plaintiff's other claim pursuant to 28 U.S.C. § 1367.

which Pattani suspected Plaintiff never remitted to Continental.

Based on these allegations, Taylor contacted Continental's corporate security office, which in turn contacted the Philadelphia police and Continental's Human Resources Department. Shortly thereafter, the Human Resources Department commenced an investigation into the allegations against Plaintiff. This investigation was conducted by Human Resources Managers Hermes Pineda ("Pineda") and Joseph Degennaro ("Degennaro"). On November 6, 1997, Taylor, Pineda, and Degennaro confronted Plaintiff with the charges, all of which Plaintiff denied. At that point, pursuant to Continental policy, Plaintiff was placed on paid suspension while the internal investigation continued.

For the next several weeks, Pineda and Degennaro investigated the charges against Plaintiff. During the course of their investigation, they uncovered several other instances of Plaintiff's misconduct, including Plaintiff's (1) purchase of personal items with a corporate credit card; (2) failure to submit, or late submission of, his activity logs [2] to his supervisor; and (3) repeated improper authorizations of his time card. Plaintiff was later informed that, based on the new discoveries, the investigation had been expanded. In addition, Plaintiff was notified that a fact-finding hearing would be held to address all of the alleged misconduct, at which time Plaintiff would have the opportunity to rebut the charges, present evidence, and call witnesses.

On December 9, 1997, Continental held the fact-finding hearing, which was attended by Taylor, Pineda, Degennaro, Plaintiff, and Plaintiff's union representative, Kevin Nolan. Plaintiff denied the kickback claims leveled by Bulboff and Pattani, as well as Pattani's allegation about the payment for the air bottles. Plaintiff maintained that these claims were fabricated because the vendors were angry at him for reducing the amount of work sent to them. With regard to the other charges, Plaintiff admitted many of the violations at issue but disputed certain details and offered a variety of explanations for his actions. Plaintiff did not raise any claim of racial discrimination against any party.

Following the hearing, Continental investigated several of the explanations that Plaintiff offered in his defense. Finding these explanations without merit, Continental informed Plaintiff in a December 17, 1997 letter that, based on the results of the investigation, he was terminated. Thereafter, Plaintiff invoked Continental's established grievance procedure to contest his discharge. The final step in that procedure was a hearing before the System Board of Adjustment, which consisted of four judges—two chosen by Continental and two chosen by Plaintiff. After the hearing, three judges upheld Plaintiff's termination, while the fourth judge abstained.

Prior to the System Board's hearing, Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 17, 1997. On August 23, 1998, Plaintiff received his right to sue notice from the EEOC. He later commenced this action on November 19, 1999.

## DISCUSSION

### I. *Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

**2.** Activity logs are internal forms used by Continental employees to chronicle and approve purchases made with corporate credit cards. After receiving a credit card statement, the employee is required to copy each entry onto an activity log and note any irregular charges. This log is then to be submitted to a supervisor who, after checking and approving the entries, forwards the log and receipts to Continental's Accounts Payable Department.

al fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the basis for its motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden pursuant to Fed.R.Civ.P. 56(c), the burden shifts to the non-moving party to go beyond mere pleadings and to demonstrate, through affidavits, depositions or admissions, that a genuine issue exists for trial. *Id.* at 324, 106 S.Ct. 2548. In so doing, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and may not merely rely on unsupported assertions, conclusory allegations, or mere suspicions. *Willmore v. American Atelier, Inc.*, 72 F.Supp.2d 526, 527 (E.D.Pa.1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Put simply, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505. When the non-moving party fails to create such disagreement, "[t]he moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## II. *Title VII* [3]

### A. *General Principles*

■ Race discrimination claims under Title VII require application of the now-familiar burden shifting framework articulated in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* test "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In such cases, *McDonnell Douglas* allows a plaintiff to show discrimination through indirect evidence in a three-step process. First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff succeeds, a presumption of discrimination is created that the employer must then rebut by stating a legitimate non-discriminatory reason for the adverse employment action. Third, if a legitimate non-discriminatory reason is provided, the plaintiff has the chance to show that the stated reasons were not the true reasons for the dismissal, but were a mere pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817. In the instant case, both parties apparently agree that, for purposes of this Motion, the first two steps of the *McDonnell Douglas* process have been fulfilled. As a result, we will focus our analysis solely on the third step, namely, whether Plaintiff has sufficiently demonstrated that Continental's reasons for his discharge were a pretext for racial discrimination.

### B. *Pretext Analysis*

■ The United States Court of Appeals for the Third Circuit recently summarized a plaintiff's burden at summary judgment with respect to the third step of the *McDonnell Douglas* framework. To defeat summary judgment, the plaintiff must point "to some evidence, direct or circumstantial, from which a fact-finder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons;

---

**3.** Because Title VII, § 1981, and PFPO address similar substantive issues, and because claims under those statutes are analyzed in the same manner, we will limit our discussion to Title VII issues. Our discussion and analysis of these issues applies with equal force to

Plaintiff's § 1981 and PFPO claims. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir.1999); *Hong v. Temple Univ.*, No. CIV.A. 98–4899, 2000 WL 694764, at *9 (E.D.Pa. May 30, 2000).

or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones,* 198 F.3d at 413 (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994) and *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir.1996) (en banc)). Under the first prong of this standard, a plaintiff "cannot simply show that the employer's decision was wrong...." *Id.* (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108–09 (3d Cir. 1997)). Instead, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence." *Id.* (same). In other words, a plaintiff may meet this standard by demonstrating that "the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" *Id.* (quoting *Keller,* 130 F.3d at 1109).

■ Under the second prong of the standard, a plaintiff can survive summary judgment by showing that discrimination was more likely than not the impetus behind the adverse employment action. *See id.* This showing can be made by, for example, demonstrating that the employer has previously discriminated against the plaintiff or other employees or has granted preferential treatment to persons not in a protected class. *See id.* (quoting *Simpson v. Kay Jewelers,* 142 F.3d 639, 645 (3d Cir.1998)).

■ In this case, Continental argues that its decision to terminate Plaintiff was based on Plaintiff's documented violations of company policy. Moreover, Continental asserts that, even if Plaintiff could cast some doubt on the correctness of the decision to discharge, Plaintiff fails to raise any issue of material fact with regard to Continental's racial animus. In response, Plaintiff contends that he has presented enough evidence to suggest that that "race was a motive in Defendant's actions...." (Pl. Resp. at 6). Thus, it appears that Plaintiff is attempting to show pretext via the second alternative stated in *Sheridan* and *Fuentes.* Regardless of which alternative Plaintiff is proceeding under, however, it is obvious that he falls far short of satisfying his burden.

In support of his argument, Plaintiff points out that Taylor fired another black employee, Pedarvis Mathis, Jr., who later filed a charge of discrimination against Taylor. However, notably absent from Plaintiff's argument is any further reference to Mr. Mathis's case. The record reveals no agency or court resolution of the case or even any further prosecution of the charges by Mr. Mathis. Indeed, all that Plaintiff points to are the unsubstantiated accusations made by Mr. Mathis in his preliminary charge and complaint. Such conclusory assertions, based on a single alleged incident, are woefully inadequate to defeat a motion for summary judgment.

■ The other aspects of Plaintiff's argument are equally meritless. For instance, Plaintiff characterizes the evidence concerning the sale of the air bottles to Pattani as the "most glaring evidence which indicates that Defendant had an illicit motivation in effecting Plaintiff's termination." (Pl. Resp. at 3). Specifically, Plaintiff argues that Pattani offered somewhat conflicting reports on what occurred during the sale of these bottles, thereby casting doubt on Pattani's credibility.[4]

4. The dispute centers on whether Pattani gave Plaintiff $500 cash or a $500 dollar money order for the air bottles. Pattani signed a handwritten "receipt" indicating that he gave Plaintiff a money order, (*see* Pl.Ex. C), but later disavowed that version of events, (*see* Def. Ex. 4 at 53–54). Plaintiff's own version of events of this incident changed over time as well: First, Plaintiff claimed to have given a money order to Pattani to send to Accounts Payable. (*See* Def. Ex. 3 at 115). Later, Plaintiff claimed that he himself—not Pattani—had sent the money order. (*See* Def. Ex. 3 at 293).

Plaintiff's point appears to be that, because Taylor credited the version of the story that implicates Plaintiff's guilt, Taylor must have an ulterior, presumably discriminatory, motive. Even accepting Plaintiff's version as true, his conclusion is thoroughly rebutted by the record evidence. First, the record plainly indicates that neither of Pattani's accounts were rejected out of hand, but rather both accounts were weighed and evaluated by Continental. Second, although the ultimate decision to terminate was made by Taylor, the investigation of Plaintiff's misconduct was conducted primarily by Pineda and Degennaro, neither of whom are alleged to have discriminated against Plaintiff.[5] Moreover, there was consensus among Pineda, Degennaro and Taylor that termination was not only appropriate, but mandated under the circumstances.[6] Finally, Plaintiff's argument completely overlooks the undisputed fact that there were numerous other infractions—several of which Plaintiff admitted to committing—that were significant enough standing alone to justify his dismissal.

The remainder of Plaintiff's argument is devoted to giving various explanations for his misconduct or disputing minor details of the alleged incidents. We need not parse all of Plaintiff's explanations because they, at best, only undermine the wisdom of the decision to terminate; they in no way suggest any racial animus on Continental's part nor raise any doubt as to Continental's reasonable belief that Plaintiff engaged in serious misconduct justifying termination. *See, e.g., Jones,* 198 F.3d at 413 (explaining that "factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.") (citations omitted); *Hicks v. Arthur,* 878 F.Supp. 737, 739 (E.D.Pa.1995) (stating that "an ill-informed decision or an ill-considered decision is not automatically pretextual if the employer gave an honest explanation for termination."). We note again that Plaintiff, in greater or lesser degrees, has admitted that he charged personal items on his corporate account, improperly authorized his own time card, and failed to submit his activity logs in a timely manner and, in some cases, failed to submit them at all. Moreover, even Plaintiff acknowledges that many of these very violations are sufficient to justify termination.

Based on the overwhelming evidence in this case, we find that no reasonable jury could rationally find that Continental's decision to terminate Plaintiff was motivated by racial animus or that any of Continental's articulated reasons for Plaintiff's termination were not worthy of credence. As a result, we conclude that Plaintiff has not raised a genuine issue of material fact to suggest that Continental's reasons for his discharge were pretext for racial discrimination. Accordingly, we will grant Continental's Motion.

## CONCLUSION

An appropriate Order follows.

## *ORDER*

AND NOW, this 19th day of December, 2000, upon consideration of Defendant's Motion for Summary Judgment (Document No. 11), and Plaintiff's Response thereto, it

---

5. Plaintiff's Complaint contains no allegations against Pineda or Degennaro. In addition, Plaintiff's own deposition appears to indicate that his only claim of discrimination is against Taylor. (Def. Ex. 3 at 11–12). In his deposition, Plaintiff, in responding to the question of why he sued Continental replied: "I felt the representative of Continental—not Continental as a whole but a representative of Continental—was very discriminatory against me." (*Id.*) Plaintiff later indicated that the representative to whom he was referring was Ernie Taylor. (*Id.*)

6. Pineda indicated in his deposition that it was a joint decision to terminate Plaintiff, further elaborating that, after the investigation, "[Taylor, Degennaro, and I] all kind of looked at each other and said, man, this guy has to go." (Def. Ex. 4 at 154).

is hereby ORDERED that Defendant's Motion is GRANTED.