NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2636

———————

CHASE FROST,

Appellant

v.

CITY OF PHILADELPHIA

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-03869)
District Judge: Honorable Michael M. Baylson

———————

Submitted under Third Circuit LAR 34.1(a)
On April 16, 2020

Before: CHAGARES, SCIRICA and ROTH, Circuit Judges

(Opinion filed: January 6, 2021)

———————

OPINION*

———————

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge

Chase Frost sued the City of Philadelphia, alleging disability discrimination for its initial refusal to admit him to the Fire Academy Paramedic Program, its treatment of him during that program, and its decision to terminate him. Because the record does not support his claims, we will affirm the District Court's order granting summary judgment for the City.

I.[1]

While working as a volunteer firefighter in 2007, Frost was involved in a rescue that resulted in burns to over 60% of his body and the loss of his left arm and lower right leg. He uses various prosthetics, swapping them out in response to different tasks. After the accident, Frost became a certified paramedic and applied to be a Fire Services Paramedic for the City. All Philadelphia Fire Service Paramedics must graduate from the Fire Academy Paramedic Program. To participate in the Fire Academy, all paramedic candidates must successfully complete a medical examination.

Prior to the start of the 2015 Fire Academy, Frost's personal physicians opined that he could safely perform all of the exercises required by the program. However, the City's doctor, who was responsible for providing medical clearance, was not satisfied with the personal doctor's opinions. Consequently, he asked a physical therapist to test Frost's ability to perform four additional exercises. By the start of the 2015 Fire

---

[1] Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for resolution of this case.

Academy, the physical therapist had not yet evaluated Frost and the City's doctor neither approved nor denied Frost's application. Without medical clearance, Frost could not participate in the 2015 Fire Academy.

The physical therapist ultimately failed to conduct the four exercises requested by the City's doctor. However, the therapist evaluated Frost and endorsed his ability to safely participate in the Fire Academy. After receiving the therapist's report, the City's doctor medically cleared him and approved his participation in the 2016 cadet class. On September 12, 2016, Frost started the program.

As part of the Fire Academy, cadets are tested on patient care protocols, an essential part of being a paramedic. The Fire Academy's code of conduct states that in order to graduate, cadets must pass every protocol quiz with a minimum score of 80%. If a cadet fails a protocol quiz, the Fire Academy's re-test policy permits one re-test.[2]

Frost received a failing grade of 70% on Protocol Quiz 1. As a result, Frost and the other cadets who failed received "mediation," at which instructors met with them and reviewed their answers. The City also offered Frost and the other cadets additional tutoring before the following day's re-test. Frost did not attend the extra tutoring session. On September 22, Frost retook Protocol Quiz 1 and again received a score of 70%. That same day, the City terminated his employment and dismissed him from the Fire Academy, citing its re-test policy.

II.

---

[2] JA898.

3

In January 2016, after he had not been permitted to participate in the 2015 Fire Academy, Frost filed his first charge of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, alleging that the City failed to hire him because of his disability. In October 2016, after his dismissal from the Fire Academy, he filed a second charge of discrimination, alleging wrongful termination, hostile work environment, failure to provide reasonable accommodation, and retaliation. After receiving a Notice of Right to Sue, Frost sued the City. The District Court granted the City's motion for summary judgment. Frost appealed.

III.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary.[3] Summary judgment is only appropriate if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."[4] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] "In making this determination, we 'must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'"[6]

---

[3] *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016).
[4] Fed. R. Civ. P. 56(a).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008) (quoting *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001)).

4

IV.

Frost brings his claims pursuant to the Americans with Disabilities Act (ADA),[7] the Pennsylvania Human Relations Act,[8] and the Philadelphia Fair Practices Ordinance.[9] All three statutes prohibit employment discrimination based on disability. We interpret his state claims in accordance with the ADA.[10]

A. Disparate Treatment

Frost's disparate treatment claims are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, to establish a prima facie case of discrimination, Frost must establish that he "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability."[11] If Frost is successful, the City must then articulate some legitimate, nondiscriminatory reason for Frost's adverse treatment.[12] If the City puts forth a legitimate reason, Frost must demonstrate that that reason is pretextual.[13]

We analyze Frost's failure to hire and wrongful termination claims under this framework.[14]

---

[7] 42 U.S.C. § 12101, *et seq.*
[8] 43 Pa. C.S. § 951, *et seq.*
[9] Phila. Code § 9-1100, *et seq.*
[10] *See Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 306 (3d Cir. 1999); *Joseph v. Continental Airlines, Inc*., 126 F.Supp.2d 373, 376 n.3 (E.D. Pa. 2000).
[11] *See Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (quoting *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002)).
[12] *See McDonnell Douglas*, 411 U.S. at 802-03.
[13] *See id.* at 804-05; *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 152 (3d Cir. 2017).
[14] *See In re Tribune Media Co*., 902 F.3d 384, 401 (3d Cir. 2018); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

### i. Failure to Hire

Frost contends that the City failed to hire him on account of his disability when it did not permit him to enter the 2015 Fire Academy. The District Court held that Frost could not establish the second prong of a prima facie case because he was not qualified for the job at that time. We agree.

"The determination of whether an individual with a disability is qualified is made at the time of the employment decision."[15] To determine whether Frost was qualified at the start of the 2015 Fire Academy, we must evaluate (1) whether he satisfied the prerequisites for the position, and (2) whether he can perform the essential functions of the job, with or without reasonable accommodation.[16] Frost fails to satisfy the first prong. Frost did not receive the medical clearance required to participate in the Fire Academy. Despite the two letters from Frost's personal doctors in support of Frost that the City received, the City's doctor who evaluated Frost was not certain that he could safely perform the essential functions of the job. Without medical approval from the City, he was not qualified for employment as a cadet in the Fire Academy.[17] Therefore, Frost cannot establish a prima facie claim for failure to hire.

Frost claims that his admittance into the 2016 Fire Academy, without any new information about his capabilities, shows that he was also qualified in 2015. However, if

---

[15] *Turner*, 440 F.3d at 611.
[16] *See id.*; *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).
[17] *See* 29 C.F.R. § 1630.2(q) ("Qualification standards . . . includ[es] the . . . medical [and] safety . . . requirements established by [an employer] as requirements which an individual must meet in order to be eligible for the position held or desired.").

an employer has concerns about a disabled employee's abilities to perform a job, it must "educate itself about the varying nature of impairments and . . . make individualized determinations about" the extent of an employee's impairments.[18]   While ultimately the physical therapist did not conduct the four exercises, the therapist did evaluate Frost.  The City benefitted in its medical assessment of Frost by having this independent third party evaluation.

### ii.  Wrongful Termination

Frost alleges that he was terminated from the 2016 Fire Academy because of his disability.  The District Court held that although Frost met his initial burden to establish a prima facie case of wrongful termination, he failed to establish that the City's nondiscriminatory reason for his termination, because of his failed re-test, was pretextual.[19]  We agree that Frost cannot show pretext.

A plaintiff may establish pretext by showing that "the employer treated other, similarly situated persons not of his protected class more favorably."[20]  "[A]nother employee is 'similarly situated,' . . . [if he is] directly comparable to [him] in all material respects."[21]  Frost was not treated differently than non-disabled cadets.  He has not

---

[18] *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 192-93 (3d Cir. 1999).

[19] We will assume, without deciding, that Frost has established a prima facie case of wrongful termination because the City does not meaningfully challenge that aspect of the District Court's decision.  However, we note that the District Court did not discuss causation, as required by the third element of a prima facie case.  *See Turner*, 440 F.3d at 611.  We observe scant evidence in the record to support the conclusion that Frost was terminated *because* of his disability.

[20] *Fuentes*, 32 F.3d at 765.

[21] *See In re Tribune Media Co.*, 902 F.3d at 403 (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)).

produced a cadet who failed a re-test and was treated more favorably than him. In fact, all other cadets who failed re-tests were also terminated. Other cadets who are not similarly situated cannot be used to establish pretext. Frost has not offered any other reason to believe that the City's proffered reason for his termination was pretextual.

B. Failure to Provide Reasonable Accommodations

Frost contends that the City failed to provide him with reasonable accommodations. A plaintiff bringing a failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."[22] The District Court held that his claim fails because there is no material dispute as to whether the City engaged in a good faith, interactive process with Frost to accommodate his needs. We agree.

When Frost was accepted at the 2016 Fire Academy, he submitted a list of accommodations which included special equipment and modifications of certain exercises. Fire Academy officials managed the procurement of all his requested equipment. Frost alleges that he never received his requested special bunker gear, coat, or special steering device needed to drive the City's vehicles. The City measured and fitted Frost for his coat and boots and was in the process of creating special steering devices for his use on vehicles. The coat was delivered; Frost's termination ten days into

---

[22] *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

8

the Fire Academy obviated the City's need to obtain the other items. The record

demonstrates that the City worked towards accommodating Frost's requests.

Frost also claims that on the first day of the Fire Academy he was not permitted to

swap out his non-running prosthetic leg during a running portion of training, which

resulted in a temporary injury that caused his absence the next day.[23] Frost admits that on

the day he was injured, he never requested time to swap out his non-running prosthetic,

nor that he was denied an accommodation. "'[A]n employer cannot be faulted if' the

employee's actions or omissions during the interactive process cause the process's

failure."[24] We agree with the District Court that no reasonable jury could conclude that

the City failed to engage in a good faith interactive process to provide accommodations to

Frost.

C. Hostile Work Environment

Frost contends that he was subject to a hostile work environment because of his

disability. To survive summary judgment, he must show that (1) he is a qualified

individual with a disability; (2) he was subject to unwelcome harassment; (3) the

harassment was because of his disability or a request for accommodation; (4) "the

harassment was sufficiently severe or pervasive to alter the conditions of [his]

employment and to create an abusive working environment"; and (5) that the City knew

or should have known of the harassment and failed to take prompt and effective remedial

---

[23] Two officers visited Frost at his home to check on him and his absence was excused.
[24] *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 507 (3d Cir. 2010) (quoting *Taylor*, 184 F.3d at 317).

9

action.[25]  The District Court held that the City's conduct was not severe or pervasive enough to support his claim.  We agree.

To determine if harassment is sufficiently severe or pervasive, courts consider the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."[26]  Contrary to Frost's assertions, the District Court's conclusion was not based on improper credibility determinations.  Frost's allegations amount to nothing more than a few sideways glances, out-of-context remarks, and alterations made to his training exercises.  Even evaluating the cumulative impact of these perceived slights, the City's actions were not sufficiently severe or pervasive to support a hostile work environment claim.

D. Retaliation

Frost alleges that the City retaliated against him by terminating him because of his January 2016 EEOC complaint.  When there is no direct evidence of retaliation, as is the case here, retaliation claims utilize the *McDonnell Douglas* burden-shifting framework set forth above.[27]  "To establish a prima facie case of retaliation under the ADA, a plaintiff must show:  (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal

---

[25] *See Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999).
[26] *Id.*
[27] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).

connection between the employee's protected activity and the employer's adverse action."[28]  The District Court held that Frost failed to establish a causal connection between his complaint and his termination.  We agree.

Causation can be shown through temporal proximity between the protected activity and the adverse employment action, an intervening pattern of antagonism, or the evidence taken as a whole.[29]  We agree with the District Court that there is nothing about the timing of his termination to raise an inference of causation.[30]  Although he was dismissed just two weeks into the Fire Academy, there were over nine months between his first EEOC complaint and his termination.  During that time, the City medically cleared him and hired him.  Frost argues that the District Court ignored the intervening period of antagonism and his swift termination.  However, the City's alleged actions do not amount to antagonistic behavior any more than they support Frost's hostile work environment claim.  Although he claims that the City dismissed him from the Fire Academy at its first opportunity to do so, he ignores the fact that the City excused his absence for missing the second day of training and that other cadets were terminated for violating the same re-test policy.  Frost cannot point to any evidence that raises an inference of causation.  Accordingly, he cannot establish a prima facie case of retaliation.

V.

---

[28] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).
[29] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).
[30] *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017) ("An inference of 'unduly suggestive' temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action.").

11

For the foregoing reasons, we will affirm the judgment of the District Court.