

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2006

# Turner v. Hershey Chocolate

Precedential or Non-Precedential: Precedential

Docket No. 04-4674

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"Turner v. Hershey Chocolate" (2006). *2006 Decisions*. Paper 1343.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1343

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4674
_____

JANET M. TURNER,
Appellant

v.

HERSHEY CHOCOLATE USA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-04412)
District Judge:  Honorable Paul S. Diamond
_____

Argued December 5, 2005

Before: RENDELL, FISHER, and
VAN ANTWERPEN, Circuit Judges.

(Filed March 20, 2006 )
_____

Brooke M. Boyer [ARGUED]
232 North Sixth Street
Reading, PA   19601
   *Counsel for Appellant*


Mark A. Fontana [ARGUED]
Michael M. Miller
Wolf, Block, Schorr & Solis-Cohen
213 Market Street, 9th Floor
P. O. Box 865
Harrisburg, PA 17108
   *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

Janet Turner appeals from the District Court's December 1, 2004 order entering summary judgment against her on her claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  We will reverse the order granting summary judgment and remand for further proceedings in accordance with this opinion.

I.

Janet Turner began working at Hershey's[1] Reading, Pennsylvania plant in August, 1985. She worked in several production capacities and as a custodian. During her employment, Turner was diagnosed with medical problems, including fused cervical discs, postlaminectomy pain syndrome, cervical radioculopathy, and thoracic outlet syndrome. These conditions compelled Turner to undergo surgeries in 1998, 2000, and 2002.

When Turner returned to work in 1999 (following her 1998 back operation), Hershey accommodated her new work restrictions, assigning her to a "light duty position" as a shaker table inspector on a York peppermint pattie line. The position involved sitting or standing on the side of the line, while repeatedly reaching, stretching, and twisting to maneuver and remove the chocolate-covered and uncovered mint patties.

At the time of Turner's employment, the Reading plant had six shaker table inspectors, assigned in pairs to one of three lines: lines 7, 8, and 9. Line 7 required the inspector to stand and repeatedly bend and twist to sort different size mint patties moving down the conveyor. The inspectors on lines 8 and 9 sat while sorting patties of the same size. Work on lines 8 and 9 was considered easier than work on line 7.

---

[1]Hershey was mis-identified in the caption in the District Court as Hershey Chocolate USA. The correct legal entity is now The Hershey Company.

Before Turner's 1999 return to work, her treating physician, Dr. David Allen, reviewed a videotape depicting the shaker table inspectors' duties, and completed a form stating that Turner could return to work as an inspector. Dr. Allen cleared Turner for light work that required no bending, stooping, or lifting of more than twenty pounds. Two days after returning, however, she complained to her immediate supervisor, Steve Heimbach, that she was in pain and could not work. Mr. Heimbach transferred Turner from line 7 to line 8, and then later allowed her to transfer to line 9– which Turner believed was easier– when another inspector went on medical leave.

In 2001, Hershey learned that the shaker table inspectors had suffered an increased incidence of repetitive stress injuries to their wrists and arms. Although Hershey plant management was especially concerned about line 7 because it was the most demanding line, they noticed repetitive stress injuries to inspectors working on all three lines. From March 2001 to June 2001, plant nurse Suzanne Werley, manufacturing department manager Leslie Goss, and mint department production supervisor Robert Ladd met and discussed ways to protect the inspectors from these repetitive stress injuries. They adopted Nurse Werley's suggestion that Hershey require its inspectors to rotate among all three lines daily. This rotation system would allow the inspectors to change positions hourly, to alternate between sitting and standing, and to use both their left and right arms, thus decreasing the likelihood of repetitive stress injury.

On July 11, 2001, Mr. Ladd, Ms. Werley, and Kathy Gibson, manager of employment, safety, and security, met with the six shaker table inspectors to discuss the implementation of

the rotation system. Turner objected to the rotation scheme and refused to work on line 7. Turner immediately contacted her lawyer who wrote a letter requesting that plant management exempt her from the rotation system. The next day, Turner revisited her physician. Dr. Allen issued her a new form that was more restrictive than the form he issued in April 1999, limiting her to activities that did not require *any* stretching, bending, twisting, or turning of the neck or lower back or lifting of greater than 20 pounds.

On July 17th, Turner presented Hershey with the new form and her lawyer's letter. The next day, Leslie Goss, employee relations manager Jeff Johnson, Steve Heimbach, Turner's union representative Sandra Kurtz, and Turner discussed whether, in light of Turner's new work restrictions, it was feasible to exempt her from the rotation system. Hershey decided that Turner's inability to work on line 7 prevented her from participating in the rotation system, which they viewed as necessary to prevent injuries to all inspectors. Hershey did not allow Turner to continue as a shaker table inspector.

Hershey notified Turner of her right under the union contract to go on short-term disability, which Turner applied for on August 2, 2001, and later received. In her application, Turner stated that she was unable to return to work from and after July 12, 2001, and was unable to work in any position in the Reading plant. Dr. Allen confirmed this in letters he sent to Hershey in August 2001 and September 2001.

At Hershey's suggestion, Turner and her doctor completed an application for long-term disability coverage.

5

Where the form indicated that she should describe the injury she incurred, Turner wrote that it was an "ongoing situation." App. at 402. Where the form asked her how her injury impeded her ability to do her occupational duties, she responded "[b]ecause of pain." *Id.* Dr. Allen stated that Turner was "unable to do her regular job description." App. at 403. She was awarded long-term benefits. Later that year, the Social Security Administration determined that she was disabled from and after July 2001, and awarded her total disability benefits.

Turner's last day of work at Hershey was July 18, 2001. Because she was deemed a disabled employee, her union contract provided her with full-time employee benefits for the next twenty-four months until July 25, 2003. On April 30, 2003, Turner filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which found no cause for discrimination and issued a right to sue letter. On July 29th, Turner filed this lawsuit, alleging that she was not completely disabled and could have performed her job if Hershey had accommodated her by exempting her from the rotation system. Following the close of discovery, Hershey filed a motion for summary judgment, which the District Court granted.

II.

Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on disability. *See* 29 C.F.R. § 1630. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the

6

disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." *Id.* § 12111(8). An employer discriminates against a qualified individual when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." *Id.* § 12112(b)(5)(A). "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." *Id.* § 12111(9).

## III.

We must first decide whether the District Court's grant of summary judgment should be upheld on the rationale that Turner is bound by her prior submissions to the Social Security Administration and should be judicially estopped from arguing now that she can work. If estoppel applies, Turner's claim will be foreclosed and our analysis of the District Court's rulings under the ADA is unnecessary. Hershey argues that Turner made statements in support of her application for Social Security

7

Disability Insurance ("SSDI") and long-term disability benefits that should be held to estop her from asserting that she is a qualified individual under the ADA. We disagree. Because these statements did not state categorically that Turner could not work at all or take into account Turner's entitlement to reasonable accommodation, we see no inconsistency between these statements and her current claim. *See, e.g., Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 284 (3d Cir. 2001) (ADA claimant must show she can perform the essential functions of the job *with reasonable accommodation*).

With respect to her application for long-term disability benefits, Hershey argues that when Turner wrote "[b]ecause of pain" in response to the question "How does your injury or sickness impede your ability to do your occupational duties?" she made a statement which should be understood to estop her current claim that she can perform the essential functions of a shaker table inspector with reasonable accommodation. App. at 402. However, that Turner's pain impedes her ability to perform certain occupational functions is hardly a statement of total disability. Further, it does not address the question of whether she would continue to have pain if she were granted the accommodation that she has requested, namely to be exempted from work on line 7. Neither does Turner's response address the severity of the pain experienced and whether such pain would make her incapable of performing the essential functions of the shaker table inspector position. Therefore, because this statement neither is a categorical statement of total inability to perform her job function nor takes into account Turner's entitlement to reasonable accommodation, we do not find that it judicially estops Turner from asserting her ADA claim.

8

Hershey also points to two statements made by Dr. David Allen, Turner's physician, in support of her long-term disability application. Dr. Allen described Turner's restrictions as "[v]ery light duty, no lifting over 10-15 lbs., no repetitive use of arms." *Id.* at 403. Dr. Allen also states, "[p]atient unable to do her regular job description." *Id.* With respect to the light duty restrictions that Dr. Allen placed on Turner, whether these restrictions would prevent Turner from performing the essential functions of her job with reasonable accommodation is a factual question for the jury. As to Dr. Allen's statement that Turner is "unable to do her regular job description," we note that Turner has conceded that she is not able to do her *regular job description*. This is precisely why she is requesting an accommodation.

With respect to her SSDI application, Hershey argues that three statements made by Turner should be read as conclusive as to her inability to perform the shaker table inspector position. First, in response to the question, "How do your illnesses, injuries or conditions limit your ability to work?" Turner wrote, "I have chronic pain, my hands, arms and shoulders are weak and painful, I can not walk far and cannot sit for prolonged periods. I cannot bend or stretch or lift more than 10 LBS, I also cannot stoop or kneel." App. at 406. Second, when asked for additional information, Turner wrote

> 1. I have been told that I need replacement surgery for my left knee. I am unable to stand or walk for any extended periods.
>
> 2. My doctor has informed me that my performing

9

additional work will cause additional disk spaces to become damaged.

3. My spinal fusions do not allow me to bend or stretch.

*Id*. at 413. Third, Hershey points to Turner's response to the question "When did you become unable to work because of your illnesses, injuries or conditions?" Turner responded "7/2001." *Id*. at 406.

We will examine each of these statements in turn to see if they should be given estoppel effect. First, we look at Turner's statement that chronic pain, weakness in her arms and shoulders, and her inability to walk far, sit for prolonged periods, bend, stretch, lift more than ten pounds, stoop or kneel are conditions which "impede" her ability to work. While these conditions indisputably impede Turner's ability to work, we cannot say that they foreclose the possibility that she could perform the essential functions of the shaker table inspector position with reasonable accommodation. Certainly, the record does not reflect that the essential functions of her position require walking long distances, stooping, kneeling, or lifting heavy objects. To the extent that the position does require sitting for long periods, bending, and stretching, we see no reason why some reasonable accommodation could not be made.

Second, we turn to Turner's statement that "[m]y doctor has informed me that my performing additional work will cause additional disk spaces to become damaged." *Id.* at 413. This is not a statement that Turner is unable to perform her duties, but,

10

rather, a statement about her concerns regarding her health if she performs additional duties. In addition, this statement must be read in light of *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), in which the Supreme Court held that statements in support of an SSDI application do not take into account of the concept of reasonable accommodation under the ADA and, therefore, do not necessarily estop a claim under the ADA that one is capable of performing the essential functions of one's position *with reasonable accommodation*. Thus, we must read Turner's statement as saying, in effect, "My doctor has informed me that my performing additional work *without reasonable accommodation* will cause additional disk spaces to become damaged." This reading is consistent both with the Court's analysis in *Cleveland* and with Turner's claim for relief. Turner has not argued that she can perform the job at each of the three shaker table inspector lines. She has consistently maintained that she cannot perform the more rigorous duties of line 7. Thus, her statement that continuing to work in a position that requires her to rotate to line 7 harms her health is not inconsistent with the idea– and cannot be read to estop her from claiming– that she can perform the essential functions of her job on lines 8 and 9 without this harm to her health.

Finally, we turn to Turner's response of "7/2001" to the SSDI application question regarding when she became unable to work. As discussed in *Cleveland*, this statement of inability to work must be read as lacking the qualifier of reasonable accommodation, which did not apply for purposes of her SSDI application, but does apply for purposes of her ADA claim. Thus, in her SSDI application, Turner was saying, in effect, "I am unable to work without reasonable accommodation." This

11

statement is not inconsistent with her ADA claim, in which she is saying, in effect, "I am able to work *with reasonable accommodation*." *See Cleveland*, 526 U.S. at 802.

Thus, having considered Turner's various statements in her long-term disability application and her application for Social Security disability benefits, we find that her claim under the ADA is not estopped by any "admissions" made in these applications.

IV.

We turn now to the merits issue presented by the appeal before us, namely, whether the District Court properly granted summary judgment in favor of Hershey on Turner's claims because the rotation policy at issue was an essential function of Turner's job. A disabled employee may establish a *prima facie* case under the ADA if she shows that she can perform the essential function of the job with reasonable accommodation and that the employer refused to make such an accommodation. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 284 (3d Cir. 2001).

As the District Court observed, the central issue in this case is Hershey's requirement that Turner participate in its shaker table rotation scheme. In granting Hershey's motion for summary judgment, the District Court found that the scheme by which Hershey required its shaker table inspectors to rotate between lines 7, 8, and 9 was an "essential function" of the job. App. at 17. Because she could not perform this "essential function" required of a shaker table inspector, the District Court

12

reasoned that Turner was not a "qualified individual" within the meaning of the ADA. The District Court also reasoned that Turner could not maintain a claim for reasonable accommodation, because any exemption from the rotation system would create a danger of increased injuries for Turner and the other shaker table inspectors and, therefore, would be unreasonable.[2]

In reviewing an order granting summary judgment, we exercise plenary review. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Viewing the facts in the light most favorable to Turner, we must determine whether there was a genuine issue of material fact and, if not, whether Hershey was entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Anderson*

---

[2]The District Court observed, "Were Plaintiff exempt from rotating, she would work only on Lines 8 and 9.... Such a limited work assignment would increase the likelihood of Plaintiff suffering repetitive stress injuries to her arms or wrists. As significant [sic], it would also necessarily limit the rotation system for the other Inspectors, thus increasing the likelihood that they would suffer repetitive stress injuries." Dist. Ct. Op. at 14. However, it is not clear to us upon what the District Court based these conclusions. The record contains no evidence of any kind that an alternate rotation system– one in which Turner rotated only between lines 8 and 9 and the other shaker table inspectors accommodated their rotation schedule accordingly– would be likely to cause any adverse health consequences to Turner or others.

13

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).[3]

In order to make out a prima facie case of disability discrimination under the ADA, Turner must establish that she (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability. *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002); *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Here, Hershey does not contest that Turner has a disability. Hershey does contend that Turner did not suffer an adverse employment action as a result of her disability, but the parties do not press this issue before us on this appeal.[4]

---

[3] The District Court had subject matter jurisdiction over this claim arising under the Americans with Disabilities Act pursuant to 28 U.S.C. § 1331. We have jurisdiction over the appeal from the final order of the District Court pursuant to 28 U.S.C. § 1291.

[4] Moreover, this issue will most likely be resolved by the ultimate ruling on the issue that is before us, for, while Hershey contends that Turner's leaving work was voluntary and not as a result of an adverse employment action, the failure to reasonably accommodate a disabled and qualified employee constitutes an adverse employment action for purposes of the ADA. *See Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 771 (3d Cir. 2004). "[T]he question of whether a proposed accommodation is reasonable is a question of fact." *Buskirk*, 307 F.3d at 170; *see also Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 286 (3d Cir. 2001). If a trier of fact

14

Therefore, our analysis focuses on whether Turner is a "qualified individual."

A "qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Buskirk*, 307 F.3d at 168. The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position. 29 C.F.R. § 1630.2(n); *Buskirk*, 307 F.3d at 168. The determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit. *Gaul*, 134 F.3d at 580.

Neither party disputes that Turner satisfies the first part of this inquiry in that she has the qualifications to perform the position held. Additionally, both parties appear to concede that Turner could not return to her former position as a shaker table inspector and perform the essential functions on all lines without reasonable accommodation. Turner claims that the reasonable accommodation that she requested, and to which she was

---

concludes that Turner is a qualified individual, it could also find that the failure to exempt Turner from the rotation system was a failure to reasonably accommodate and accordingly constituted an adverse employment action under the ADA.

15

entitled, was that she work only on lines 8 and 9, and, thus, be exempted from the rotation plan to the extent that it would require her to work on line 7. The question we are confronted with, then, is not whether she can perform the essential functions of her job without reasonable accommodation, for clearly she cannot; but, rather, whether she can perform the essential functions of her job *with* reasonable accommodation.[5]

## V.

"[W]hether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] *all* relevant evidence.'" *Deane v. Pocono Medical Ctr*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc) (quoting 29 C.F.R. § 1630.2(n)). The District Court concluded that Hershey's rotation system itself was an essential function of the shaker table inspector position. Were we to uphold the District Court's conclusion and grant of summary judgment we would need to conclude that reasonable jurors could not but find that rotating among all three tables is an essential function of the shaker table inspector position at Hershey.

---

[5]We observe that there is some ambiguity in the record as to whether Turner can, in fact, perform her duties even on lines 8 and 9. For example, on July 12, 2001, Dr. Allen completed a Work/School Release for Turner in which he described her restrictions as "No stretching, bending, twisting, or turning neck or lowback [sic]. No lifting greater than 20 lbs." We leave it to the District Court on remand to determine the implications of the doctor's diagnosis.

16

Whether a job duty is an "essential function" turns on whether it is "fundamental" to the employment position. 29 C.F.R. § 1630.2(n)(1). The term "essential function" does not include the "marginal" functions of the position. *Id.* A job function may be considered essential for any of several reasons, including, but not limited to, the following:

> (i) The function may be essential because the reason the position exists is to perform that function;

> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

*Id.* at § 1630.2(n)(2). We have difficulty when we attempt to reconcile these concepts with the District Court's determination that Hershey's rotation scheme was an "essential function." Specifically, we note that (i) the shaker table inspector position does not exist in order that inspectors may rotate; that (ii) implementing or not implementing the rotation scheme would appear to have no effect on the number of employees required to operate the shaker tables; and (iii) rotating is not a highly specialized function and Turner was not hired for her rotating

17

ability.

Evidence of whether a particular function is essential might include, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

*Id.* at (n)(3).

Here, several specific facts, when juxtaposed against these factors, weigh against a finding that rotation itself is an essential function of the shaker line position: (ii) the written job description for the shaker table inspector position contains no

18

reference to rotation; (iii) little time– presumably only a few seconds– is actually spent rotating from machine to machine each hour; (v) the collective bargaining agreement makes no reference to the rotating of shaker table inspectors; and (vi) in the past, shaker table inspectors have not rotated. Thus, with the exception of the first and fourth factors,[6] the evidence points against finding that the rotation scheme is an essential function of the job.

While our analysis points in the direction of finding that the rotation policy was not an essential function of Turner's job, we have historically refused to make such a factual finding on our own, lest we run afoul of our own directive to the district

---

[6]We note that the first factor– the employer's judgment as to which functions are essential– is but one piece of evidence to be considered by the trier of fact. In addition, while Hershey has described the requirement that Turner rotate between shaker table lines as an essential function for purposes of this litigation, Hershey did not include rotation between lines in its list of "[e]ssential duties and responsibilities" set forth in the shaker table inspector job description. *See* App. at 182-83; *Deane v. Pocono Medical Ctr*, 142 F.3d 138, 146 (3d Cir. 1998) (en banc) (an employer's written job description shall be considered evidence of the essential functions of the position).

With respect to the fourth factor, Hershey alleges that lack of rotation results in increased incidence of repetitive stress injuries. However, we note that Hershey does not support this contention with any medical evidence or scientific data.

courts that these issues are for the jury to decide. In *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc), the employer/hospital claimed that lifting heavy objects was an essential function of Deane's job as evidenced by the job description of her nursing position. That job description included "frequent lifting of patients" as one of the "major tasks, duties and responsibilities" of a nurse in Deane's position. 142 F.3d at 148. Deane admitted that lifting heavy objects, including patients, was a "critical job demand[ ]," and the hospital insisted that a "nurse's inability to lift patients" could create a dangerous situation for Deane's patients. *Id.* Nevertheless, despite the intuitive appeal of the hospital's argument, we refused to grant summary judgment, concluding that whether lifting heavy objects was an essential function of being a nurse was a factual question for the jury. *Id.*

Similarly, in *Skerski v. Time Warner Cable Co.*, 257 F.3d 273 (3d Cir. 2001), the plaintiff was employed by Time Warner to service cables, wires, and aerial cable plants, and upon being diagnosed with panic and anxiety disorder, he became unable to climb and work at heights. 257 F.3d at 276. The District Court reasoned that "climbing was an essential function of the installer technician's job that Skerski could not perform" and granted judgment as a matter of law to Time Warner because Skerski was not a qualified individual under the ADA and therefore could not establish his *prima facie* case. *Id.* We reversed, concluding that the definition of "essential function" set forth in 29 C.F.R. § 1630.2(n)(1), as well as the non-exhaustive list of probative evidence set forth in 29 C.F.R. § 1630.2(n)(3), cautioned against any premature determination of what is an essential function. *Id.* at 280.

20

So, too, here, the issue should be decided by a jury. Turner has presented evidence to support a reasonable jury in finding that rotating is not an essential function of the shaker table inspector position and, therefore, that she is a qualified individual within the meaning of the ADA. Accordingly, we hold the District Court erred in granting summary judgment and determining that Turner was not a "qualified individual" under the ADA because she could not perform an essential job function. Rather, the fact issue as to "essential function" must be decided by a jury. *See Deane*, 142 F.3d at 148.

VI.

Hershey argues in the alternative that, even if the rotation policy is not an essential function, nonetheless, it is entitled to summary judgment because Turner's request to not rotate is not a reasonable accommodation as a matter of law. As we noted above, an employer must "mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodations would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." *Id.* § 12111(9).

The duty to provide a reasonable accommodation is subject to certain limitations. The ADA does not require an

21

employer to create a new position in order to accommodate an employee with a disability, or transform a temporary light duty position into a permanent position. *Buskirk*, 307 F.3d at 169. And, relevant here, an employer is not required to provide a reasonable accommodation if it would pose a "direct threat" to the safety of the employee or others, 29 C.F.R. § 1630.15(b)(2), *see Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002), or if to do so would conflict with seniority rules, *see US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

As with the issue of "essential function," the issue of "reasonable accommodation" presents a fact question. In deciding whether a genuine issue of material fact exists regarding the reasonableness of the requested accommodation, we first examine whether Turner has made a facial showing that her proposed accommodation is possible. *Gaul*, 143 F.3d at 580. If Turner has made out a *prima facie* showing, the burden then shifts to Hershey to prove, as an affirmative defense, that the accommodations requested by Turner are unreasonable, or would cause an undue hardship on the employer. *Id.*

We find that Turner has satisfied her initial burden. Turner's proposed accommodation appears practical. Here, Hershey's rotation policy is a new one, which had never previously been required of employees in Turner's position. Turner's proposed accommodation would permit the new rotation program to continue, albeit on a modified basis. Under Turner's proposed accommodation, each inspector could continue to rotate on an hourly basis, with Turner, herself, rotating only between lines 8 and 9. Hershey has not contended that this is not practical or possible.

22

The burden then shifts to Hershey to demonstrate that this accommodation is unreasonable or would cause an undue hardship. Hershey argues that because the rotation policy was implemented to avoid injury, exempting Turner has safety and health-related implications. However, the record in support of this proposition is not well developed. There is no evidence of the need to have the full rotation scheme urged by Hershey, or of the health or other implications of a modified rotation policy. Further, there is little evidence as to the extent of the safety risks posed by previous practices on the lines that caused Hershey to adopt the rotation policy.

Viewing the facts in the light most favorable to Turner, we cannot conclude as a matter of law, based on the record as it now exists, that the system proposed by Turner would pose a "direct threat" to its employees or place an "undue hardship" on Hershey. Thus, the question of whether Turner can perform the essential functions of her position with reasonable accommodation is an open question of material fact that must be decided at trial.

Hershey, of course, will have the opportunity at trial to defeat Turner's claim by showing that her proposed accommodation would jeopardize the health or safety of its employees, *see Echazabal*, 536 U.S. at 78-79, 84-85 (an employer is not required to accommodate an employee if the accommodation threatens the health or safety of that employee or other employees); *Buskirk*, 307 F.3d at 168, that it would impose an undue hardship, *see* 42 U.S.C. § 12112(b)(5)(A), or that even with the accommodation Turner would still be unable

23

to perform work on lines 8 and 9.[7]  This issue should be decided by a jury based upon a fully developed record.

## VII.

In sum, the question of whether Turner can perform the essential functions of her position with reasonable accommodation is an issue for the jury.  We find that Turner is not estopped by her SSDI and long-term disability claims.  Having so found, we will reverse the District Court's grant of summary judgment in favor of Hershey and remand to the District Court for further proceedings consistent with this opinion.

---

[7]*See* fn. 2, *infra*.