NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1730
_____

EDWARD M. SUPINSKI,
                                        Appellant

v.

UNITED PARCEL SERVICE, INC.;
CATHY CLINE; TRACEY NEWCOMER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Nos. 3:06-cv-0793 and 3:08-cv-0371)
District Judge:  Honorable Thomas I. Vanaskie
_____

Argued January 5, 2011

Before: AMBRO and FISHER, *Circuit Judges*, and SÁNCHEZ,[*] *District Judge*.

(Filed: February 15, 2011)

Cynthia L. Pollick, Esquire (Argued)
363 Laurel Street
Pittston, PA  18640

Kimberly M. Kaplan, Esquire (Argued)
Miriam S. Edelstein, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301

_____

[*] The Honorable Juan R. Sánchez, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

SÁNCHEZ, *District Judge*.

Edward Supinski appeals from two orders of the District Court, which together granted summary judgment in favor of Supinski's former employer, United Parcel Service, Inc. (UPS), and two individual UPS employees on Supinski's claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. § 951 et seq. After a shoulder injury left him unable to return to his position as a package car driver, Supinski sued UPS to redress the company's failure to accommodate him by placing him in a position he could perform with his physician-imposed lifting restrictions. Because we conclude there is a genuine factual issue as to whether Supinski was a "qualified individual" with respect to the alternative positions he sought and did not obtain, we will reverse the orders granting summary judgment in favor of UPS and remand for further proceedings consistent with this opinion.

I.

Supinski began working for UPS in 1979 as a car washer and eventually moved into the position of package car driver at the UPS facility in Taylor, Pennsylvania. In October 2000, Supinski suffered a work-related rotator cuff tear of his right shoulder, for which he underwent surgery and a period of physical therapy. In October 2001, Supinski's orthopedic surgeon approved him to return to work with the following permanent lifting restrictions: "[s]eventy pound lifting limit to waist level, twenty-five pound lifting limit to shoulder level, [and] twenty

2

pound lifting limit overhead." (App. 79.) Although these restrictions meant Supinski could no longer perform his package car driver job (App. 541), he sought to return to UPS in another position that he could perform despite his lifting restrictions.

In November 2002, UPS notified Supinski the company had concluded he was not eligible for a reasonable accommodation under the ADA. (App. 578.) Supinski thereafter filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC), alleging disability discrimination based on UPS's failure to provide him with a reasonable accommodation when there were "jobs available that [he] could perform with [his] restrictions." (App. 575.)

Supinski also continued to seek employment with UPS through his union. At some point prior to May 2005, Supinski applied for a feeder driver position (App. 288), and in July 2006, he applied for a combined position as a car washer/unloader (App. 92). Supinski was not hired for either position.

In March 2006, Supinski filed suit against UPS in the Lackawanna County Court of Common Pleas (*Supinski I*), asserting PHRA claims for disability discrimination, failure to accommodate, and retaliation.[1] After UPS removed the case to the United States District Court for the Middle District of Pennsylvania, Supinski amended his complaint to include ADA claims against UPS and PHRA claims against two UPS employees, and the defendants moved for summary judgment. In February 2008, while the defendants' summary judgment motion was pending, Supinski filed a second disability discrimination action against UPS (*Supinski II*) in the

---

[1] Supinski also asserted a state law claim for wrongful discharge, which he later withdrew.

same federal court, asserting ADA and PHRA claims based on UPS's failure to hire him for the car washer/unloader position. In January 2009, the District Court granted summary judgment for the individual defendants and granted partial summary judgment for UPS on Supinski's retaliation claim in *Supinski I*, but permitted Supinski's remaining claims to go forward. The District Court concluded that although Supinski had not presented any evidence to suggest he had an actual disability—*i.e.*, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual"—the evidence was sufficient to create a genuine factual issue as to whether Supinski nevertheless had a disability within the meaning of the ADA because UPS regarded him as having such an impairment. 42 U.S.C. § 12102(1).[2]

In February 2009, the District Court consolidated *Supinski I* and *Supinski II*, and UPS thereafter filed a motion for summary judgment in the consolidated action. In February 2010, the District Court granted the motion in its entirety. The District Court concluded Supinski could not prevail on his disability discrimination and failure to accommodate claims as a matter of law because he failed to show he could meet the lifting requirements of the car washer/unloader and feeder driver positions, and because UPS was not required to modify essential job functions to accommodate him. The District Court also concluded Supinski's retaliation claim failed as a matter of law because Supinski could not establish a causal connection between his protected

---

[2] Effective January 1, 2009, Congress amended the ADA to provide "[a] covered entity . . . need not provide a reasonable accommodation . . . to an individual who meets the [ADA's] definition of disability . . . solely [on the basis of being regarded as having a disability]." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3558 (2008). UPS does not argue this provision should be applied retroactively, but "assumes that it would have been obligated, at the time [of the events in question], to provide reasonable accommodation to Supinski had it mistakenly regarded him as disabled." (Appellee's Br. 11 n.2.)

4

conduct and UPS's refusal to hire him for vacant positions where the record showed Supinski could not perform an essential function of those positions. Finally, the District Court held Supinski had failed to establish a claim based on a pattern or practice of discrimination.

Supinski appeals, arguing the District Court erred in (1) concluding that heavy lifting exceeding Supinski's restrictions was an essential function of the car washer/unloader and feeder driver positions; (2) failing to consider whether there was some reasonable accommodation that would have permitted Supinski to perform the essential functions of those positions; (3) failing to consider Supinski's ability to perform the essential functions of positions other than car washer/unloader and feeder driver; (4) declining to apply principles of estoppel to preclude UPS from contesting his ability to perform any jobs based on its contrary position in his worker's compensation proceedings; and (5) dismissing his retaliation claim.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*, applying the same standard as the District Court. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 n.3 (3d Cir. 1998) (en banc). Summary judgment is proper when, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Material facts are those facts which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where the moving party seeks summary judgment on an issue on which it will bear the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007).

## III.

To make out a prima facie case of disability discrimination or failure to accommodate under the ADA,[3] a plaintiff must establish, *inter alia*, that he is a "qualified individual," defined as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). This inquiry has two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Id.*

Focusing on the latter question,[4] the District Court concluded Supinski was not a qualified individual with respect to either the car washer/unloader or the feeder driver position because heavy lifting in excess of Supinski's restrictions was an essential function of both

---

[3] "[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010).
[4] UPS has never suggested Supinski lacked the "requisite skill, experience, education and other job-related requirements" of the car washer/unloader position, but contends he is not qualified for the feeder driver position because he does not have a commercial driver's license.

6

positions and UPS was not required to modify this essential function in order to accommodate Supinski. Supinski challenges both conclusions.

In general terms, the "essential functions" of a position are the "fundamental job duties," as opposed to the "marginal functions." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential for a number of reasons, including because (1) "the reason the position exists is to perform that function," (2) only a limited number of employees are available "among whom the performance of that job function can be distributed," or (3) the function is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." *Id.* § 1630.2(n)(2). Under the ADA's implementing regulations, evidence a particular job function is essential may include, but is not limited to:

(i)     The employer's judgment as to which functions are essential;
(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii)   The amount of time spent on the job performing the function;
(iv)    The consequences of not requiring the incumbent to perform the function;
(v)     The terms of a collective bargaining agreement;
(vi)    The work experience of past incumbents in the job; and/or
(vii)   The current work experience of incumbents in similar jobs.

*Id.* § 1630.2(n)(3).

As we have repeatedly recognized, "whether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] *all* relevant evidence.'" *Deane*, 142 F.3d at 148 (quoting 29 C.F.R. pt. 1630, app. § 1630.2(n)) (alteration in original); *accord Turner*, 440 F.3d at 612; *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 279 (3d Cir. 2001). Although the burden is on the plaintiff to show, as part of his prima facie case, that he is a qualified individual, the employer "has the burden of showing a particular job function is an

7

essential function of the job." *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007); *Ward v. Mass Health Research Inst., Inc.*, 209 F.3d 29, 35 (1st Cir. 2000); *see also* 29 C.F.R. pt. 1630, app. § 1630.2(n) (while "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards," the employer "will have to show that it actually imposes such requirements on its employees in fact, and not simply on paper"). Accordingly, we may uphold the grant of summary judgment in UPS's favor only if we conclude reasonable jurors "could not but find" that heavy lifting exceeding Supinski's restrictions was an essential function of the car washer/unloader and feeder driver positions. *See Turner*, 440 F.3d at 612.

The summary judgment record contains little evidence regarding the extent of the lifting requirements of either position. The main evidence on the subject is a September 11, 2006, document entitled "UPS Essential Job Functions," which purports to list the essential job functions for various positions at UPS. (App. 465-529.) Although the document does not include a description for the combined car washer/unloader position for which Supinski applied in July 2006, it includes separate descriptions for the positions of car washer and loader/unloader, as well as a description for the feeder driver position. (App. 491, 496, 500.) Both the loader/unloader and the feeder driver descriptions list as essential job functions the ability to "[l]ift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and to "[a]ssist in moving packages weighing up to 150 pounds." (App. 496, 500.) The loader/unloader description also lists the ability to "[l]ift packages to heights above the shoulder and lower to foot level as appropriate." (App. 500.) As Supinski notes, however, these job

8

descriptions were not prepared until September 2006, after he was denied both positions. The descriptions are thus of limited relevance in establishing the essential functions of the positions at the time of his applications. *See* 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description *before* advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." (emphasis added)).

Even if the job descriptions had been prepared before Supinski submitted his bids, they would not compel the conclusion that lifting in excess of Supinski's requirements was an essential function of either position. While the job descriptions refer to the lifting of packages "weighing up to 70 pounds" (App. 496, 500), even after his injury Supinski could lift up to seventy pounds to waist level (App. 79). The loader/unloader job description also refers to the lifting of packages "to heights above the shoulder"; however, the description does not specify the weight of packages which must be lifted to such heights, instead stating above-the-shoulder lifting must be done "as appropriate." (App. 500.) Moreover, both job descriptions include the disclaimer that the essential functions of the job "may vary greatly depending on the size and location of the UPS facility," and "[a]t some locations, employees may not perform all of the essential job functions listed above." (App. 496, 500.) The job descriptions thus fail to conclusively establish that lifting in excess of Supinski's restrictions was an essential function of either position.

UPS also points to "'declarations of both management and union representatives confirm[ing] that since 1997 the Car Washer job has been combined with another position involving heavy lifting.'" (Appellee's Br. 26 (quoting Dist. Ct. Op. of Feb. 11, 2010, at 15).)

9

Although these declarations support UPS's contention that, since 1997, all car washer positions at the Taylor facility have been combination positions involving at least one other task requiring lifting, they do not address the extent of the lifting requirements for such combination positions. Indeed, the only declaration to include more than a reference to lifting is the declaration of UPS Pocono Center Business Manager John Romeo, who states all car washer positions since 1997 have involved "at least one additional task requiring the same lifting requirements as package car drivers, feeder drivers and loaders." (App. 431.) Romeo, however, also does not elaborate on the extent of the lifting requirements for these positions. Moreover, to the extent Romeo's declaration suggests the feeder driver and loader/unloader positions had the same lifting requirements as the package car driver position, which Supinski admitted he could no longer perform, Romeo's declaration is contradicted by the deposition testimony of former feeder driver Nicholas Coyer, who stated, in connection with Supinski's worker's compensation proceedings, "[w]ithout a doubt, [he] could have performed [his] duties [as a feeder driver]" if he had the same lifting restrictions as Supinski. (App. 119.)[5]

Finally, UPS argues heavy lifting is an essential function of nearly all of its bargaining unit positions because it is "the vast bulk of labor needed by the company to fulfill its core mission—moving packages." (Appellee's Br. 27.) But even if, as the District Court suggested, lifting is inherent in the work performed by UPS employees because UPS is a package delivery

---

[5] As the District Court noted, Coyer stated he personally lifted forty to fifty pounds above his shoulders as a feeder driver and probably lifted seventy-five pounds by himself; however, when asked whether he nevertheless could have performed his job duties with Supinski's lifting restrictions, he stated: "[w]ithout a doubt, I could have performed my duties. Without a doubt." (App. 115-16, 118-19.)

10

company, there is no evidence regarding the extent to which the car washer/unloader and feeder driver positions required lifting in excess of Supinski's restrictions, the amount of time spent on the job doing such heavy lifting, the consequences to UPS of not requiring Supinski to perform such lifting, or the experience of any incumbents—past or present—in the combined car washer/unloader position. Given the lack of evidence regarding the nature and extent of the lifting requirements of the car washer/unloader and feeder driver positions, we cannot conclude a reasonable jury would be compelled to find lifting in excess of Supinski's restrictions was an essential function of either position. Accordingly, we hold the District Court erred in concluding, as a matter of law, that Supinski was not a qualified individual because the lifting requirements of these positions exceeded his physical capacity.[6]

Supinski also argues the District Court erred in failing to consider whether UPS could have accommodated his perceived disability by arranging for other employees to assist him with heavy lifting. A "reasonable accommodation" under the ADA may include measures such as job restructuring or reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). An employer may be required to "restructure a job by reallocating or redistributing nonessential, marginal job functions"; however, the employer "is not required to reallocate essential functions." 29 C.F.R. pt. 1630, app. 1630.2(o); *see also Skerski*, 257 F.3d at 285 n.4 ("[E]mployers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid

---

[6] Although the District Court noted in its summary judgment decision that UPS also argued Supinski was not qualified for the feeder driver position because he did not have a commercial driver's license, the District Court did not decide this issue. We decline to decide the issue on appeal in the first instance.

11

it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function.").

Having found that heavy lifting exceeding Supinski's restrictions was an essential function of the car washer/unloader and feeder driver positions—the only positions other than package car driver for which UPS had vacancies following Supinski's injury and return to work—the District Court concluded UPS was not required to alter this requirement in order to accommodate Supinski. Because we conclude there is a genuine factual issue as to whether such heavy lifting was an essential job function of these positions, we must also hold the District Court erred in concluding, as a matter of law, that UPS had "no duty to change the requirements for [the car washer/unloader and feeder driver] positions to accommodate Mr. Supinski's physical capacity." (App. 21.) UPS argues Supinski's proposed accommodation—assistance from fellow employees to lift packages exceeding his restrictions—would "require UPS to employ a second person the majority of the time to assist Supinski" and is therefore not reasonable as a matter of law. (Appellee's Br. 28.) However, UPS cites no evidence to support this contention. This issue, too, should therefore be decided by a jury based on a fully developed record.

As to Supinski's retaliation claim, construing the claim as alleging UPS retaliated against Supinski for requesting an accommodation and filing a charge of discrimination by denying him the requested accommodation, the District Court granted summary judgment for UPS in both *Supinski I* and the consolidated action. (App. 21, 41-42.) On appeal, Supinski presses a different variation of his claim, arguing UPS retaliated against him for requesting an accommodation by

12

telling him UPS "does not take cripples back," telling him not to come to the plant looking for work as often, and offering him $1 to resign. (Appellant's Br. 33-34.) UPS concedes Supinski raised this argument in his opposition to the defendants' motion for summary judgment in *Supinski I*, but argues these allegedly retaliatory actions do not amount to an adverse action as a matter of law.[7] (Appellee's Br. 34; Appellee's Sur-reply Br. 8 n.1.) We decline to address this issue on appeal in the first instance and instead remand so that the District Court may consider whether, considered in context, these statements would dissuade a reasonable worker from engaging in the protected conduct of requesting an accommodation. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010) ("An employer's words . . . must be considered in context to determine whether they would 'dissuade a reasonable worker' from filing a claim and thus result

---

[7] UPS also argues we lack jurisdiction to consider this theory, which was raised only in *Supinski I*, because the District Court's summary judgment order in *Supinski I* directed the Clerk of Court to enter judgment in favor of UPS on Supinski's retaliation claim, and Supinski did not file a notice of appeal within thirty days after this entry of judgment. "For an action involving claims against multiple parties, a judgment that resolves less than all of the claims against all of the parties is not a 'final' judgment unless the court 'expressly determines that there is no just reason for delay.'" *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 183 (3d Cir. 2010) (quoting Fed. R. Civ. P. 54(b)). Although UPS asserts the District Court entered "final judgment" as to the retaliation claim, the Court's summary judgment order did not mention Rule 54(b) or make any finding that there was no just reason for delay. Nor does UPS point to anything in the record suggesting the District Court intended to enter judgment under Rule 54(b). In these circumstances, the District Court's judgment did not become final until February 11, 2010, when judgment was entered in favor of UPS on all of Supinski's remaining claims. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 259 F.3d 135, 143-45 (3d Cir. 2001) (finding an appeal from an order granting "final judgment" as to claims against only one defendant was premature where the district court did not cite Rule 54(b) or discuss its application).

13

in actual retaliation." (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).[8]

## IV.

For the foregoing reasons, we reverse the grant of summary judgment for UPS on Supinski's disability discrimination, failure to accommodate, and retaliation claims, and remand for further proceedings consistent with this opinion.

---

[8] We find the two remaining issues raised by Supinski to be without merit. Supinski argues the District Court erred in failing to consider his ability to perform the essential functions of positions other than car washer/unloader and feeder driver. The burden, however, was on Supinski to show other vacant, funded positions were available, *Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 360 (3d Cir. 2002), and the only evidence he produced regarding alternative positions was a chart the District Court declined to consider because it was "neither identified nor authenticated" (App. 19). We perceive no abuse of discretion in this ruling. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 ("[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings."). We also reject Supinski's estoppel argument, as UPS's position in this litigation that Supinski cannot perform the essential functions of the positions of car washer/unloader and feeder driver is not inconsistent with its position in Supinski's worker's compensation proceedings that he was generally able to work.