**Keith STOUCH; Rosemary Stouch, his wife, Appellants**

v.

**The TOWNSHIP OF IRVINGTON; Irvington Police Department; Chief Michael Chase; John Does 1–10, all jointly, severally and individually; Michael Damiano, Director.**

No. 08–3264.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 18, 2009.

Opinion Filed: Nov. 24, 2009.

Lance D. Brown, Esq., Julie A. Higgs, Esq., Depinto & Brown, Hamilton, NJ, for Appellants.

Kenneth W. Kayser, Esq., Livingston, NJ, for Michael Damiano, Director.

Michael A. D'Aquanni, Esq., Roth Horowitz, Springfield, NJ, for Irvington Twp.

Robert L. Tarver, Jr., Esq., Toms River, NJ, for Irvington Twp., Irvington Pol. Dept., and Chief Michael Chase.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Keith Stouch appeals from the order of the District Court granting defendants'

motions for summary judgment. We will affirm.

## I.

Stouch became a member of the Irvington, New Jersey Police Department in August 1994, and was terminated on December 31, 2003 after he was found to be psychologically unfit for duty. In essence, Stouch believes that he was retaliated against because of his speech criticizing the police department, and discriminated against because of a disability, in violation of the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD").

It is apparent that Stouch repeatedly complained about various policies, conditions, and incidents in the police department over the years, but for the most part, he has failed to set forth with any specificity the dates, content, and context of what he said, and to whom. We cite but a few of those numerous complaints. He complained, for example, that he was asked to falsify reports on at least two occasions, and although he believed it was "commonplace" for other officers to falsify their reports, he could not identify any specific instances. (App. at 60.) He also complained that officers and supervisors falsified their time sheets and slept in their cars or watched television at the police station rather than patrolling, and that there was a practice of not properly responding to 911 calls. He complained, as well, that officers abused the sick leave policy by blatantly ignoring it and suffering no repercussions, although he admitted that he did not have access to other officers' medical records or personnel files. He was outspoken about the conditions of the communications room, where he worked periodically, complaining that it was moldy, uncomfortably warm, and in-fested with cockroaches and mice.[1] In March 2003, he met with an FBI agent to report that he believed that Chief Michael Chase had been involved in illegal activity concerning stolen goods sometime between 1980 and 1985.

Stouch believed that he was retaliated against, primarily by enforcement of the sick leave policy, because he spoke out about what he perceived to be improprieties in the police department. The sick leave policy provides for "sick checks" whereby officers appear unannounced at the sick officer's home to ensure that he is actually at home recuperating. Stouch testified that officers appeared at his house at night to conduct sick checks. He did not claim that these visits violated the sick leave policy, but rather that they violated his constitutional rights, and that the policy was enforced only against him. He also believed that the grooming policy, which he purposefully violated, was disparately enforced against him. In a report regarding Stouch's grooming policy violation, a police captain stated:

> Officer Stouch is constantly defiant of lawful authority in matters involving his actions within the agency. He makes a point of his defiance by threatening legal action and claiming to be acting on advice of counsel. On other occasions he has made even written demands of supervisors to report to him in writing their reasons for actions taken by them and gets upon his "soapbox" in gatherings of officers expressing his prowess. I believe he is generally a good and extremely competent police officer however he takes pride in his open insubordination to every act he does not personally agree with and looks to make "a point" whenever possible.

---

1. Stouch filed a complaint about the room's conditions with the Occupational Safety and Health Administration (OSHA) in June or July 2003.

(App. at 236.) Finally, Stouch believed that his assignment to the communications room was in retaliation for having "complained about that room constantly." (*Id.* at 90.)

Stouch went on sick leave in July 2003 after an incident with another officer, during which Patrolman Brian Rice allegedly threatened him. Stouch's physician, Dr. Lawrence Eisenstein, sent a letter to Chief Chase which stated that Stouch had been diagnosed with post-traumatic stress disorder ("PTSD"), which he believed had been triggered by the incident with Patrolman Rice. Dr. Eisenstein stated that Stouch was fit to carry his weapon and return to work as of September 30, 2003. He requested that Stouch be exempted from the sick leave policy requirements and be permitted to leave his house while recuperating.

Stouch was ordered to submit to a fitness for duty exam. Alvin Krass, Ph.D. evaluated Stouch and found that he did not have any of the "fears, concerns or responses that are noted with individuals who are suffering from Post–Traumatic Stress." (App. at 207.) Dr. Krass found that some of Stouch's responses to the psychological testing indicated a "sense of resistance toward authority." (*Id.*) Dr. Krass concluded that Stouch "is not fit to return for work as a police officer" because his test results "support the impression that he is a significantly, if not profoundly, emotionally maladjusted and disturbed person in need of continuing professional care." (*Id.* at 209.) Stouch was also evaluated by John Motley, M.D., who rejected the PTSD diagnosis and diagnosed him with a personality disorder with paranoid and narcissistic traits which "interfere[s] [with] his ability to work cooperatively within the rules of his department." (*Id.* at 205.) Dr. Motley opined that Stouch "will continue to be a constant irritant to his superiors and fellow officers." (*Id.*)

Stouch was served with a Preliminary Notice of Disciplinary Action which alerted him that he had been charged with inability to perform his duties and faced removal from his position. A hearing was held on December 16, 2003, but he did not attend. The hearing officer found that he had been adequately notified and concluded that the department had appropriately dismissed him because he was psychologically unfit to serve as a police officer. Stouch was formally terminated as of December 31, 2003. He appealed his dismissal, and the dismissal was upheld by an administrative law judge ("ALJ") after four days of hearings. The ALJ found that "Stouch's history of employment in the Department demonstrates a longstanding and consistent pattern of unwillingness or inability to conform his conduct to that required of a municipal police officer." (App. at 223.) Stouch appealed to the Merit System Board, which affirmed on February 1, 2007.

Meanwhile, on December 19, 2003, Stouch, joined by his wife, filed a complaint in the U.S. District Court against Irvington Township, the Irvington Police Department, and Police Chief Michael Chase, a complaint later amended to also name Police Director Michael Damiano as a defendant. The amended complaint stated claims of, *inter alia*, First Amendment retaliation, violation of Stouch's due process rights, violations of the ADA and NJLAD, and loss of consortium. On June 30, 2008, the District Court granted defendants' motions for summary judgment. This timely appeal followed.

## II.

■ The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is ple-

nary, and we apply the same standard as the District Court to determine whether summary judgment was proper. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir.2009); *see* Fed. R.Civ.P. 56(c) (summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). While we view the facts in the light most favorable to Stouch as the nonmoving party, he "must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; [he] must introduce evidence from which a rational finder of fact could find in [his] favor." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir.2005) (citation and internal quotations omitted).

### III.

### A. First Amendment Retaliation

■■■■ "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). In order to succeed on his First Amendment retaliation claim, Stouch must demonstrate "that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*,

561 F.3d 179, 184 (3d Cir.2009).[2] "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir.2006) (quoting *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951).

■■ Stouch's primary argument before us is that he was terminated in retaliation for his speech regarding: (1) falsification of time sheets; (2) falsification of reports; (3) improper responses to 911 calls; and (4) racial discrimination and sexual harassment in the department. It is difficult to identify the exact speech to which Stouch refers, much less when and in what context it took place. *See Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir.2001) (noting the importance of the "content, form, and context of the activity in question"). Even assuming *arguendo* that Stouch's "speech" was protected by the First Amendment,[3] there is no evidence that this speech was in any way related to, let alone a substantial factor in his termination. While Stouch is correct that this is a factual question, *Gorum*, 561 F.3d at 184, in order to survive a motion for summary judgment, he was required to set forth sufficient evidence that would permit a

---

**2.** If Stouch satisfied both factors, the burden would shift to the defendants to show that "the same action would occur if the speech had not occurred." *Gorum*, 561 F.3d at 184.

**3.** Because neither the District Court nor the parties addressed whether Stouch's "speech" was made as a citizen or in the course of his duties as a police officer, for ease of analysis, we will also assume that Stouch spoke as a citizen. To the extent that Stouch has adequately identified the speech to which he is

referring, police misconduct is indeed a matter of public concern. *See Baldassare*, 250 F.3d at 195 (noting that attempts "to bring to light actual or potential wrongdoing or breach of public trust" can constitute a matter of public concern) (internal quotations and citation omitted); *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir.1994) ("Disclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern.").

reasonable jury to reach the conclusion he would have them reach. *Hill v. City of Scranton,* 411 F.3d 118, 127 (3d Cir.2005). Stouch simply did not do so.

Accordingly, to the extent that Stouch engaged in activities protected by the First Amendment, the District Court correctly found that no reasonable jury could conclude that his speech was a "substantial factor" in his termination.

## B. Discrimination on the Basis of Disability

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to ... [the] discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, a plaintiff must show that he (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability. *Turner v. Hershey Chocolate USA,* 440 F.3d 604, 611 (3d Cir.2006). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination.

■ The District Court found that Stouch did not make out a prima facie case because he did not demonstrate that he had a disability. Stouch argues before us that he is disabled because his neck and back surgeries, necessitated by his work injuries, "precluded [him] from doing work that involved lifting and carrying." (Appellant's Br. at 61.) He also mentions, without elaboration, his diagnosis of PTSD. He argues that he was otherwise qualified

to be a police officer in light of his physician's opinion that "there would be no problem with [Stouch] carrying out his daily duties as a police officer." (App. at 131.)

But assuming *arguendo* that Stouch has made out a prima facie case, defendants have set forth legitimate, non-discriminatory reasons for his termination. The consulting psychologist found that Stouch was psychologically unfit for duty, and the consulting psychiatrist diagnosed him with a personality disorder that interfered with his ability to work cooperatively as a police officer. His termination was affirmed by the ALJ after a hearing and by the Merit System Board.

■ There is no evidence that the stated reasons for Stouch's termination were a pretext for the defendants to discriminate against him on the basis of a disability. As we have explained:

> In order to prove the employer's explanation is pretextual, the plaintiff must "cast [ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication ... or ... allow[ ] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir.1994). A plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either "(i) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 764.

*Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir.2007) (alterations in original). Stouch has failed to carry this burden.[4]

## C. Retaliation in Violation of the ADA and NJLAD

The ADA prohibits discrimination against an individual who has "opposed any act or practice made unlawful by [the ADA]" or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, Stouch was required to show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dept.,* 380 F.3d 751, 759 (3d Cir.2004) (internal quotations and citations omitted). A plaintiff need not be "disabled" under the ADA to prevail on a retaliation claim. *Id.* at 759 n. 2. The *McDonnell Douglas* burden-shifting framework also applies to ADA retaliation claims. *Id.* at 760 n. 3.

Stouch has not explained why any of his activities—including his request for a different light duty job, his complaint to OSHA, and his request for exemption from the sick check policy—are protected under the ADA. His complaints to supervisors and OSHA about the communications room were not related to any disability but, rather, focused on his dissatisfaction with the conditions of the room. With respect to his physician's request that he be "allowed to leave his house freely without potential retaliatory actions by the [police] department" (App. at 131), he does not explain why this constituted a request for accommodation based on a disability. In any event, as we have already described, defendants have asserted legitimate, non-discriminatory reasons for Stouch's termination and Stouch has failed to demonstrate that these reasons were a pretext for unlawful retaliation.[5]

## D. Hostile Work Environment

To establish a cause of action for a hostile work environment under the NJLAD, a plaintiff must demonstrate "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a(3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Shepherd v. Hunterdon Developmental Ctr.,* 174 N.J. 1, 803 A.2d 611, 625 (2002) (citing *Lehmann v. Toys 'R' Us, Inc.,* 132 N.J. 587, 626 A.2d 445 (1993)). There is simply no evidence to support Stouch's claim that the sick leave policy

4. Stouch also argues that he was discriminated against on the basis of a disability in violation of the NJLAD. N.J. Stat. Ann. § 10:5–4.1. A plaintiff's burden to establish a prima facie case of discrimination under the NJLAD is less onerous than under the ADA, *Failla v. City of Passaic,* 146 F.3d 149, 154 (3d Cir.1998), but the Supreme Court of New Jersey has otherwise adopted the *McDonnell Douglas* burden-shifting framework. *Viscik v. Fowler Equip. Corp.,* 173 N.J. 1, 800 A.2d 826,

833–34 (2002). Therefore, the District Court properly granted summary judgment on this claim as well.

5. Because we employ the same test to evaluate a claim of retaliation under the NJLAD, *Tartaglia v. UBS PaineWebber Inc.,* 197 N.J. 81, 961 A.2d 1167, 1192 (2008), Stouch's claim of retaliation in violation of the NJLAD also fails.

was enforced against him because of comments he made about racial discrimination.

### E. Due Process

Finally, Stouch alleges that his due process rights were violated because, although he received a notice of the disciplinary hearing which led to his termination, he believed that the date of the hearing had been changed and he therefore did not attend. It is clear, however, that the procedural protections afforded him were more than adequate to satisfy the due process requirements of notice and opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Stouch received notice of the December 16, 2003 hearing and the charges against him, and it is unclear why he did not attend. The hearing was held in his absence after the hearing officer concluded that he had received adequate notice. He appealed the hearing officer's decision upholding his termination to the Office of Administrative Law, and the ALJ held a four-day hearing. Stouch then appealed this decision to the Merit System Board, which affirmed. Accordingly, Stouch's due process argument is without merit.

### IV.

For the foregoing reasons, we will affirm the order of the District Court.